DAVID ADELSTEIN (SBN 105250)
dadelstein@BushGottlieb.com
DAVID AHDOOT (SBN 245133)
dahdoot@BushGottlieb.com
**BUSH GOTTLIEB**
A Law Corporation
500 North Central Avenue, Suite 800
Glendale, California  91203-3345
Telephone:  (818) 973-3200
Facsimile:   (818) 973-3201

Attorneys for Plaintiffs
DIRECTORS OF THE MOTION PICTURE
INDUSTRY PENSION PLAN AND
DIRECTORS OF THE MOTION PICTURE
INDUSTRY HEALTH PLAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>NU IMAGE, INC., a California corporation,<br><br>Defendant. | **CASE NO. CV 13-03224-CAS (CWx)**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION**<br><br>DATE:　　　　November 10, 2014<br>TIME:　　　　10:00 AM<br>CRTM:　　　　5<br><br>**JUDGE:  Hon. Christina A. Snyder** |

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    UNDISPUTED FACTS AND GENUINELY DISPUTED FACTS ............... 3

III.   NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION
       SHOULD BE DENIED ........................................................................ 5

       A.    THE PLANS HAD NO REASON TO KNOW THAT NU
             IMAGE WAS FAILING TO MAKE RESIDUAL
             CONTRIBUTIONS PRIOR TO NOVEMBER 2009 ........................... 6

             1.    Payment of Payroll Contributions Does Not Constitute
                   Notice That Residual Contributions Will Eventually
                   Become Due And Are Missing ............................................... 8

             2.    Nu Image's Internal Receipt of Full Minimum Guarantees
                   Cannot Trigger The Accrual of The Limitations Period ........... 10

             3.    Under Any Standard, The Plans Timely Sought To Collect
                   Residual Contributions From Nu Image ................................. 12

       B.    THE PLANS COULD NOT SLEEP ON ITS RIGHTS PRIOR
             TO 2006, BECAUSE NU IMAGE WAS NOT A PLAN
             PARTICIPATING EMPLOYER PRIOR TO 2006 .......................... 15

       C.    THE PLANS TIMELY FILED SUIT TO COMPEL PAYMENT
             OF PAYROLL CONTRIBUTIONS ............................................. 19

       D.    RESIDUAL CONTRIBUTIONS WERE TRIGGERED FOR
             *DAY OF THE DEAD* AND *TIL DEATH* ................................. 20

       E.    NU IMAGE OWES RESIDUAL CONTRIBUTIONS ON
             BEYOND A REASONABLE DOUBT .......................................... 22

       F.    THE FIRST CAUSE OF ACTION IS NOT MOOT BY VIRTUE
             OF NU IMAGE'S TARDY PRODUCTION OF
             INFORMATION DURING DISCOVERY ...................................... 22

IV.    CONCLUSION ................................................................................ 23

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

1

## **TABLE OF AUTHORITIES**

2

Cases

3

Pages

4

*Board of Trustees of Laborers Health and*
5 *Welfare Trust fund v. Perez*
2011 WL 6151506 (N.D. Cal. November 7, 2011)..........................7

6

*Board of Trustees v. D'Elia Erectors, Inc.*
7       17 F.Supp.2d 511 (E.D. Va. 1998)...................................7

8 *Bd. of Trustees of the Auto.Indus. Welfare Fund v. Groth*
*Oldsmobile/Chevrolet, Inc.,*
9       2011 WL 1362178, p. 9-10 (.N.D. Cal. Apr. 11, 2011) ....................14

10 *City of Davis v. Coleman*
521 F.2d 661 (9th Cir. 1975)......................................19

11

*Colvin v. United Flooring*
12      2014 WL 172126 (N.D. Ind. January 15, 2014) ........................6

13 *Connors v. Hallmark & Son Coal Co.*
935 F.2d 336 (D.C.Cir.1991) ......................................13

14
*Hawaii Laborers' Trust Funds v. IGD Hospitality, Inc.*
15      2013 WL 6572583 (D. Haw. Dec. 13, 2013) .......................14, 18

16 *Jarrow Formulas v. Nutrition Now, Inc.*
304 F.3d 829 (9th Cir. 2002).....................................5

17

*Lujan v. National Wildlife Federation*
18      497 U.S. 871 (1990) ...........................................17

19 *Michigan United Food & Commercial Workers Unions & Drug & Mercantile*
*Employees Joint Health & Welfare Fund. v. Muir Co.*
20      992 F.2d 594 (6th Cir. 1993).....................................13

21 *No.Calif. Retail Clerks Unions Pension Trust v. Jumbo Markets*
906 F.2d 1371 (9th Cir. 1990)....................................6, 13

22
*Price v. Provident Life & Acc. Ins. Co.*
23      2 F.3d 986 (9th Cir.1993)........................................6

24 *Sheet Metal Workers, Local 19 v. 2300 Group, Inc.*
949 F.2d 1274 (3d Cir. 1991).....................................12

25
*Teamsters & Employers Welfare Trust of Illinois v.*
26 *Gorman Bros. Ready Mix,*
283 F.3d 877 (7th cir. 2002)......................................14

27 *Trustees of Screen Actors Guild-Producers Pension Plan v. Materna*
28      70 F.Supp.2d 1082 (C.D.Cal. 1999).................................7

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

*United States v. Ross*
   33 F.3d 1507 (11th Cir. 1994) ........................................................................16

**STATUTES**

Fed. Rule Civ. Pro. Rule 11(b)(2) and (b)(3) .......................................................1, n.1

iii

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

# I.    INTRODUCTION

Nu Image's Motion for Summary Adjudication ("**Motion**") is about as disingenuous as a motion could be without quite violating Rule 11;[1] although, Nu Image comes very close to that line.

In the Motion, Nu Image moves for relief on its Tenth Affirmative Defense ("**Laches Defense**"), and a previously un-plead Eleventh Affirmative Defense for statute of limitations ("**Limitations Defense**").[2]  The Laches Defense presents, perhaps, Nu Image's most disingenuous argument.   Nu Image claims that the Plans failed to demand Residual Contributions from Nu Image for more than seventeen years (1996 to 2013); including for twenty unidentified pictures Nu Image alleges it produced under IATSE agreements prior to 2006 ("**Pre-2006 Pictures**").  Nu Image was not, and could not have been, the signatory employer for any of the alleged Pre-2006 Pictures -- Nu Image all-but concedes that in May of 2006, it *first* signed the IATSE collective bargaining agreement and the Plan Trust Agreement documents ("**Plan Signatory Documents**").[3]  Prior to these 2006 agreements, the Plans had no contractual or statutory basis for seeking Residual Contributions from Nu Image. Nu Image thus fails to disclose an essential fact to this Court and seeks relief based on claims that are unsupported by any real evidence.

---

[1] *See*, Fed. Rule. Civ. Pro, Rule 11(b)(2) and (b)(3).

[2] Nu Image should be barred from making argument in favor of the Limitations Defense.  Nu Image failed to assert any statute of limitations defense in its Answer, failed to seek leave to amend its Answer prior to the Court's February 7, 2014 deadline, raised the defense two months after the discovery cut off, and has filed a tardy motion for leave to amend its Answer now pending before the Court. This motion for leave to amend is set for November 10, but Nu Image presses this defense without waiting for this Court to grant leave to amend.

[3] *See concurrently filed*, Plans Statement of Genuine Disputed Facts and Additional Uncontroverted Facts, p. 35, Additional Uncontroverted Facts ("**AUF**"), No. 1-3.

Amidst pages of 'contextual' and factually unsupported and irrelevant narrative regarding Nu Image's Ninth Affirmative Defense ("**Estoppel Defense**"), Nu Image then argues that the Residual Contributions claims are barred because the Plans' lawsuit was filed more than four years after the Plans knew or should have known that Nu Image was failing to pay those contributions.  Nu Image argues that the four-year statute of limitations period commenced when Nu Image internally received the first full payment ("**Minimum Guarantee**") from any one of its distributors.[4]  Yet it offers absolutely no evidence that the Plans knew or had reason to know when Nu Image received that first Minimum Guarantee from a third party distributors.  The Motion does not disclose that Nu Image failed to submit any reports to the Plans identifying receipt of these Minimum Guaranties – despite agreeing in writing to do so.  Nu Image further fails to acknowledge that it first placed the Plans on notice that it was refusing *carte-blanch* to pay Residual Contributions in the November 2009 letter of Nu Image executive Trevor Short.

While ignoring the factual reality by which Residual Contributions actually come due and are paid – a practice that Nu Image itself employs – Nu Image fails to present any actual evidence that the Plans should have known prior to November of 2009 that it was refusing to make Residual Contributions.  Judgment should be entered ***against*** Nu Image's timeliness defense given that the Plans timely filed this lawsuit on May 6, 2013, less than 4 years from Trevor Short's letter without credit for a sixteen month tolling agreement.

Nu Image then turns to the Plans' claim for Payroll Contributions, utilizing an impossible timeframe to bar Plan claims on nine of the pictures.  Nu Image brazenly suggests that because the Plans did not file suit within four years of the date Nu

---

[4] With this argument, Nu Image targets just seven of the seventeen motion pictures in this dispute.

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

Image last paid the covered employees, the Plans' claim are untimely. Again, Nu Image hides important facts.

Nu Image fails to disclose that the Payroll Contribution reports submitted to the Plans would not have placed the Plans on notice that contributions were missing. Nu Image fails to disclose that the first Nu Image payroll audits were announced no earlier than May 19, 2009, that the Plans' auditors did not gain access to Nu Image books and records until months thereafter, and that it was only after auditor review of these books and records that delinquencies were identified. The Plans filed suit on May 6, 2013, within four years of the earliest conceivable date the Plans, through its auditors, could have learned of the Payroll Contribution shortfall.

On October 6, 2014, the Plans filed a Motion for Partial Summary Judgment seeking to have the Laches Defense dismissed, and also challenged the factually unsupported Estoppel Defense. The Plans' motion is currently scheduled to be heard on November 3, and based on the uncontroverted, material evidence and governing law, this Court should grant the Plans' motion. Nu Image's Motion must be denied.

## II.   UNDISPUTED FACTS AND GENUINELY DISPUTED FACTS

The Plans are multi-employer Taft Hartley benefits plans, governed by a Board of Directors, half of which are appointed by labor unions whose members are covered by the Plans and the other half of which are appointed by producers of motion pictures who participate in the Plans. <u>AUF</u>, No. 6 The Plans provide health and pension benefits to approximately 56,000 covered employees and their beneficiaries. <u>AUF</u>, No. 9 The benefits are paid from two kinds of contributions made by participating employers: (1) "**Payroll Contributions**" calculated as flat dollar amount for each hour worked by a covered employee, and (2) "**Residual Contributions**" calculated as a percentage of the revenue derived by the producer

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

from exploiting its motion picture in the DVD, Pay TV and Free TV markets ("**Residual Markets**").   <u>AUF</u>, No. 15,17-18.

Payroll Contributions are paid on a weekly basis, based on the hours worked by covered employees. <u>AUF</u>, No. 17.  Residual Contributions are paid within a reasonable time, not to exceed sixty days, after the calendar quarter in which the producer received non-returnable revenue from its exploitation of its motion picture in a Residual Market. <u>AUF</u>, No. 18.

Nu Image first signed a collective bargaining agreement with the labor organization known as the International Alliance of Theatrical and Stage Employees ("IATSE") in May of 2006, an agreement that expressly required its controlled entities to sign the IATSE-Producer Basic Agreement ("**Basic Agreement**"), make Payroll and Residual Contributions pursuant to the Basic Agreement, and included a guaranty by Nu Image of the payment of those contributions by its controlled entities.   <u>AUF</u>, No. 1, 59.  Relying on this Nu Image agreement with the IATSE, and Nu Image's execution of the separate Trust Agreement documents, the Plans accepted Nu Image as a participating employer in the Plans for the first time in October of 2006, accepted Payroll Contributions in connection with Nu Image motion pictures, and provided health and pension benefits to its employees.   <u>AUF</u>, No. 13, 43.  Plan payment of employee benefits depend on Residual Contributions as well as Payroll Contributions.   <u>AUF</u>, No. 20.  While Nu Image caused Payroll Contributions to be made to the Plans for some of the motion pictures in dispute, Nu Image has never made any Residual Contributions to the Plans.   <u>AUF</u>, No. 47.

In its defense, Nu Image claims that IATSE labor representatives (with whom it negotiated its first Basic Agreement in 2006) verbally promised Nu Image executives that Nu Image would not have to pay Residual Contributions, notwithstanding the express written provisions of the Plan Signatory Documents requiring the payment of Residual Contributions.  Nu Image concealed this alleged

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION

promise from the Plans and interested third parties, until November 2009 when Nu Image executive Trevor Short finally placed the Plans on notice that it was relying upon these alleged promises and refused to pay Residual Contributions ("**November 2009 Letter**").   AUF, No. 26-27.

The Plans demanded an audit of Nu Image for Residual Contributions in October 2009.   AUF, No. 25.  Nu Image initially refused to permit an audit.   AUF, No. 29.  Nu Image finally agreed to permit audit access by a written agreement dated February 11, 2011.  AUF, No. 29.  While the audit was progressing, Nu Image signed a series of tolling agreements that spanned sixteen months in length.   AUF, No. 31. The Plans filed suit on May 6, 2013  (Id.),  well within four years of the November 2009 Letter (without regard to the sixteen months of tolling agreements between the parties) and well within four years of the Plans' discovering (by audits commenced starting June 2009 or later) that Nu Image had not made all the Payroll Contributions owed.

## III.   NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION SHOULD BE DENIED

Nu Image's Motion argues in favor of its Laches and Limitations Defenses. As described in footnote 2, *infra*, Nu Image should be barred from advancing the Limitations Defense in this Motion given the prejudicial tactics of failing to plead or assert this affirmative defense until the eve of adjudication – over seven months after the expiration of this Court's deadline and two months after the close of fact discovery.  Without waiving the Plans' objection to this amendment, the Plans will address the Limitations Defense only in connection with the analysis of the Laches Defense.  "While laches and the statute of limitations are distinct defenses…It is extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law has run."  Jarrow Formulas v. Nutrition Now, Inc., 304 F.3d 829, 835-36 (9th Cir. 2002) (internal citations omitted).

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

**A.   THE PLANS HAD NO REASON TO KNOW THAT NU IMAGE WAS FAILING TO MAKE RESIDUAL CONTRIBUTIONS PRIOR TO NOVEMBER 2009**

In ERISA actions federal courts apply the state statute of limitations for breach of a written contract; California provides a four-year statute of limitations. No.Calif. Retail Clerks Unions Pension Trust v. Jumbo Markets, 906 F.2d 1371, 1372 (9th Cir. 1990) ("**Jumbo Markets**"). "Because the cause of action is federal, however, federal law determines the time at which the cause of action accrues." Id. Thus, a plaintiff's claim accrues, and the statute of limitations begins to run, when "the plaintiff knows or has reason to know of the injury that is the basis of the action." Id. The "injury" in an ERISA action is the breach of the agreement requiring payment to the trusts. See Price v. Provident Life & Acc. Ins. Co., 2 F.3d 986, 988 (9th Cir. 1993). Therefore, the relevant inquiry here on the issue of accrual is "the time at which the Trust Funds [knew or] had reason to know of [any] underpayment." Jumbo Markets, 906 F.2d at 1372; Colvin v. United Flooring, 2014 WL 172126 (N.D. Ind. January 15, 2014)["Even though the employer may have provided 'vague, hidden clues regarding starting dates', the court determined that it was reasonable for the fund to rely on the employer's reporting and calculations and that the fund was not put on notice until its audit."]

In light of the significant number of participating employers in the Plans, the Directors must utilize and rely upon a self-reporting system of Payroll and Residual Contributions imposed by the Basic Agreement. AUF, No. 48.  Where ERISA plans operate on a self-reporting system, i.e., a system under which employers provide the information necessary to calculate the amount of contributions due, the plans have a right to rely on the employers to submit honest and accurate information. See Jumbo Markets, 906 F.2d at 1373 ["[I]n taking on the obligation to report the basis on which contributions will be made to an ERISA fund, the employer undertakes a

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION

fiduciary obligation which must be faithfully and punctiliously observed."].[5]  "That the trustees of the Trust Funds have their own duties to verify the basis of employer contributions does not diminish the responsibilities of the employers."  Id; *see also*, Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. California v. Perez, 2011 WL 6151506, *10 (N.D. Cal. Nov. 7, 2011)[finding that Trust Fund Administrators did not reasonably become aware of unreported, delinquent contributions until it conducted an audit].

The Plans announced the Residual Contribution audit of Nu Image in October 2009 within the three-to-four year period from the date of submission of the Nu Image Plan Signatory Documents.  AUF, No. 25. This three-to-four year period reflects the Plans' traditional practice of auditing producers for Residual Contributions when such Residual Contributions could reasonably be expected to be due and paid.  AUF, No. 33.  Nu Image refused to permit the Plans audit access until August 2011.  AUF, No. 29.  But for the November 2009 Letter (discussed below), the commencement of the audit in August 2011 would have been the "discovery" that caused the statute of limitations to run. *See,* Trustees of Screen Actors Guild-Producers Pension Plan v. Materna, 70 F.Supp.2d 1082, 1086 (C.D.Cal. 1999).[6] The Plans filed suit on May 6, 2013, well within four years from the October 2009 audit announcement date, or the August 2011 audit entry date, even without the benefit of the sixteen month tolling period.

---

[5] *Accord*, Board of Trustees v. D'Elia Erectors, Inc., 17 F.Supp.2d 511, 512-13 (E.D. Va. 1998)[the trustees did not have information in their possession to discover that the employer failed to make contributions on behalf of employees not listed as covered in the employer's reports, and could claim; signature on report of person who was not found on report not sufficient to require further inquiry, Plans permitted to go back to 1981]

[6] *See also*, Board of Trustees of Laborers Health and Welfare Trust fund v. Perez, 2011 WL 6151506 (N.D. Cal. November 7, 2011).

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION

Before the November 2009 Letter, the Plans has no reason to know or suspect that Nu Image was failing (or refusing) to make the contractually required Residual Contributions pursuant to the 2006 Plan Signatory Documents.  As explained next, the fact that Nu Image itself had not made Residual Contributions through October 2009 was not, standing alone, sufficient to place the Plans on notice that Nu Image was violating the Residual Contribution obligation of the Plan Signatory Documents Nu Image's various attempts to argue for an earlier accrual date for the limitations period fall far short based on the actual facts of this record.

### 1.   Payment of Payroll Contributions Does Not Constitute Notice That Residual Contributions Will Eventually Become Due And Are Missing

Nu Image argues that the Plans' receipt of Payroll Contributions, but not Residual Contributions, should have placed the Plans on notice that Nu Image was failing to make Residual Contributions. *See e.g.*, Motion, pp. 10-11, lns. 28-2.  This argument ignores, as a preliminary matter, the undisputed fact that Residual Contributions will not be owed for every motion picture for which Payroll Contributions are made.  AUF, No. 39.  Certain kinds of projects do not require Residual Contributions; not every motion picture subject to residual contributions will be finished, much less released in a Residual Market; and not every motion picture released in Residual Markets will trigger residual contributions (based on the crew hired and where production takes place).  AUF, Nos. 39, 42.  In other words, the mere fact that the Plans received Payroll Contributions for a motion picture, but did not receive Residual Contributions for that picture, would not prove or suggest that the producer had breached its agreements and failed to make the required Residual Contributions.  AUF, No. 55.

Assuming, for the sake of argument, that this juxtaposition of Payroll-but -not-Residual Contributions should trigger Plan investigation, Nu Image's Motion

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

does not explain **how soon** after the last Payroll Contribution was received that the Plans should have known that Nu Image had breached its written obligation to make Residual Contributions -- a key issue in seeking to bar claims on the basis of timeliness.   Without comment, or evidence, Nu Image assumes and argues that the last Payroll Contribution triggers immediate notice of an employer's breach of the Residual Contribution obligations.

In fact, the theatrical release of a motion picture usually takes two-to-three years from the date Plan Signatory Documents are submitted and eighteen months from the date work begins on pre-production.  AUF, No. 36.  But Residual Contributions are paid only on the Residual Markets (not the theatrical market), and the Pay TV and DVD release take another four-to-twelve months after a theatrical release.  Id.  Assuming Nu Image had started pre-production of a motion picture immediately after signing the Plan Signatory Documents in May 2006 (not asserted by Nu Image), the Plans should not have been concerned about any absence of Residual Contributions for at least thirty months.[7]  The Plans did in fact demand an audit of  Residual Contribution in October 2009, a little more than thirty six months after Nu Image submitted its signatory documents to the Plans.

It is important to note that Nu Image's own practice follows this timeframe for reporting and paying Residual Contributions.  In making similar Residual Contribution payments on behalf of the entertainment-related Guilds, Nu Image concedes that it does not make Residual Contribution payments until well after payment of Payroll Contributions; in some cases, not unless and until the applicable Guild makes the demand for payment.  AUF, No. 76.  As a matter of course, Nu Image does not make any Residual Contribution payments until exhibition in the

---

[7] Eighteen months pre-production to theatrical release and twelve months (the outside range) from theatrical release to Residual Market release.

Residual Markets and definitely not until it receives all the money upon which such Residual Contributions would be calculated.  Id. The Plans acted prudently and reasonably in timely seeking Residual Contributions from Nu Image.  Nu Image's Motion fails to present any evidence addressing these uncontroverted facts.

### 2. Nu Image's Internal Receipt of Full Minimum Guarantees Cannot Trigger The Accrual of The Limitations Period

The focus of the Federal Court's "discovery standard," is whether the plaintiffs – here, the Plans – knew or had reason to know of Nu Image's breach of the Plan Signatory Documents.  The most clear indication of that knowledge, stems from the November 2009 Letter, where Nu Image first advises the Plans of the "IATSE representatives" oral assurances, and its blanket refusal to make Residual Contributions. AUF, No. 26.

Nu Image's Motion altogether ignores the November 2009 Letter, and instead claims that this four-year limitations period commenced when Nu Image received the first full Minimum Guarantee from any one of the distributors of that motion picture.  Nu Image makes this argument for seven motion pictures, citing testimony that producers typically do not make Residual Contributions to the Plans until the quarter in which the producer first received the Minimum Guarantee the distributor was obligated to pay Nu Image.  The Motion identifies Nu Image's alleged date of receipt[8] and then argues that the Plans did not file suit within four years of that date.[9] Nu Image even provides the Court with a Chart identifying the number of days between the "date of receipt" to the Plans' filing date. (Nu Image Motion, pp. 16-17)

---

[8] See, Nu Image Motion, pp. 16-17.

[9] Taking into account the sixteen months of tolling agreements.

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

Nu Image's theory of when This argument suffers from multiple flaws.[10]   Nu Image fails to argue how the Plans knew, or should have known, the date that Nu Image had received that first full Minimum Guarantee from one of its distributors. Nu Image never made any reports to the Plans identifying the revenue it had received for any of these pictures for which Residual Contributions are sought in this action.  <u>AUF</u>, No. 45.  Therefore, Nu Image never advised the Plans of the date this first full payment of a Minimum Guarantee had been made by any of its distributors for any of its pictures.  <u>Id</u>  Nu Image certainly fails to provide any evidence that the Plans should have known this information concerning Nu Image's internal business practices.   Nu Image fought to keep such information hidden by refusing the Plans' attempts to audit its books and records.  <u>AUF</u>, Nos. 29, 31.

The Plans had every reason to believe that Nu Image was complying with its Residual Contribution obligation, at least until the November 2009 Letter. <u>AUF</u>, No. 50.  In 2006, Nu Image had first signed the multiple Plan Signatory Documents promising in writing to make Residual Contribution payments to the Plans. <u>AUF</u>, Nos. 1-3.  Producers typically do not make Residual Contributions to the Plans until two-to-three years after signing the Plan Signatory Documents. <u>AUF</u>, No. 36.

---

[10] Nu Image's misleading analysis, based on the "first full payment from a distributor," conceals the full language of the Basic Agreement describing when Residual Contributions are due.  Articles XIX(b)(7) and XXVIII(b)(10) requires that Residual Contributions be paid within a reasonable time, ***not to exceed sixty days***, after the quarter in which the producer received the revenue for which these Residual Contributions are owed.  Nu Image's Motion ignored the sixty day feature altogether, arguing that the Residual Contributions were due at the end of the quarter.  <u>See</u>, <u>Nu Image Motion</u>, pp. 16-17, lns. 10-6.  Even under Nu Image's flawed analysis, adding this sixty-day period brings four of the seven pictures within Nu Image's safe harbor four year period:  *Blonde Ambition*, *The Cleaner, Day of the Dead*, and *Mad Money*.

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

Moreover, prior to October 2009, the Plans **had** received Residual Contributions with respect to certain Nu Image motion pictures, masking any missing Residual Contributions.  AUF, No. 51.  In a practice common to independent producers, between 2006 and 2009, Nu Image had licensed distribution rights for six of the seventeen pictures to a large distributor (Columbia, Warner Bros or Starz Media) and those entities had made Residual Contributions based on revenue from Residual Markets in its licensed territory.  AUF, Nos. 52-53.  These reports and contributions identified the motion picture for which the contributions were being made, but not the geographic territory for which the contributions were being paid.  AUF, No. 53.  Accordingly, the Plans had every reason to believe that Nu Image was complying with its Residual Contribution obligation (by negotiating payment through Columbia, Warner Bros or Starz Media), but had no reason to know that Nu Image had failed (and would refuse) to make contributions for the balance of the pictures, at least until the November 2009 Letter.  AUF, No. 54.

### 3.    Under Any Standard, The Plans Timely Sought To Collect Residual Contributions From Nu Image

ERISA does not require that the Plans audit each and every motion picture or every motion picture employer.  The audit provision is not intended to require, absent suspicion of wrongdoing, the Directors to continuously audit each and every one of its signatory employers in the hopes of detecting a potential cause of action.  *See*, Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1282 (3d Cir. 1991)[the agreements self-reporting system serves the purpose of vitiating the need for constant and disruptive audits of the employer's records by funds][11]  "The

---

[11]Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 342-343 (D.C.Cir.1991)[although authorized by agreement, audits were not expected absent reasonable ground to suspect a signatory employer of underpayment or misreporting].

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

crucial question…is whether the [trust fund] had sufficient notice of probable discrepancies in the employer's contribution reports that the concept of due diligence required them to investigate long before they did." <u>La Barbera v. A. Morrison Trucking, Inc.</u>, 2011 WL 703859 (E.D.N.Y. Feb. 18, 2011)(internal citations omitted).[12]  Because the Plan Signatory Documents impose a self-reporting system, the Plans had no knowledge, or reason to know, of Nu Image's breach until the November 2009 Letter. <u>Jumbo Markets</u>, 906 F.2d 1371, 1373 (9th Cir. 1990).

Even if the November 2009 Letter is not used as the point of accrual, but instead the Plans are held to the ***shorter*** of the two-to-three year period within which Residual Contributions are typically due and paid, the following analysis shows that the Plans brought suit within four years for the seven pictures targeted by Nu Image's Motion:  The "Date of Execution" is the earliest date Nu Image became signatory for the motion picture per the agreements (Ramas Decl.  22, p. 12 (8-11) and Ex L)

| Title | (A) Date of Execution of Signatory Documents | (B) Plus Two Years - Exhibition In Residual Market | (C) Number of days From "B" to 5/6/2013 Filing Date |
|---|---|---|---|
| *Blonde Ambition* | 10/10/06 | 10/10/08 | 3 years, 87 days |
| *The Cleaner* | 12/01/06 | 12/01/08 | 3 years, 35 days |
| *Day of The Dead* | 8/14/06 | 8/14/08 | 3 years, 144 days |
| *King of California* | 2/13/06 | 2/13/08 | 3 years, 326 days |
| *Mad Money* | 2/28/07 | 2/28/09 | 2 years, 312 days |
| *Til Death* | 5/04/06 | 5/04/18 | 3 years, 246 days |
| *Wicker Man* | 6/26/06 | 6/26/08 | 3 years, 324 days |

[12] *Quoting*, <u>Michigan United Food & Commercial Workers Unions & Drug & Mercantile Employees Joint Health & Welfare Fund v. Muir Co.</u>, 992 F.2d 594, 597-98 (6th Cir. 1993).

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

In Opposition to the Plans' Motion for Partial Summary Judgment,[13] Nu Image argues that because of the alleged oral representations made at the 2006 negotiations, the Plans should have been on notice as early as these negotiations – before the Plan Signatory Documents were even executed.  Nu Image's reliance on the Estoppel Defense to prop up the unsupported Laches Defense is impermissible. As best described by Judge Posner in Gorman, a defendant should not be allowed to multiply defensive argument by alleging distinct equitable defenses on the same allegations.  In that case, Judge Posner thus re-cast the defendant's laches defense, because the company was really arguing that the suit "shouldn't have been filed at all…" not that "it should have been filed sooner…" Gorman, 283 F.3d 877, 882 (7th Cir. 2002).

More to the point, Nu Image agreed in writing to pay Residual Contributions and never advised the Plans or the Board of Directors of this alleged "promise" – an oral arrangement that Nu Image believed must be kept secret from interested third parties.   Even assuming that the alleged oral assurances were made, under these circumstances the Plans cannot be bound, or be held to have notice, based on events occurring during labor negotiations – regardless of the dual representation status of the labor negotiators.  *See e.g.* Board of the Trustees of the Automotive Industries Welfare Plans v. Groth Oldsmobile, C 09-0465 PJH, 2011 WL 1362178 (N.D. Cal. Apr. 11, 2011)[trust fund was not bound because "there was no evidence that the Board of Trustees…did anything to give Groth the reasonable impression that [the trustee/union representative] was acting on the Board's behalf."; *see also*, Hawaii Laborers' Trust Funds v. IGD Hospitality, Inc. CIV. 13-00320 SOM/KS, 2013 WL 6572583 (D. Haw. Dec. 13, 2013)[trust fund not bound because there was no

---

[13]*See*, Nu Image's Opposition to the Plans Motion For Partial Summary Judgment, [Doc No. 70], p. 22, lns. 11-24.

evidence that "any other trustee even knew of [the union/trustee] alleged actions, let alone that the Trust Fund as a whole ratified her conduct."][14]

In summary, the period of accrual was triggered by the November 2009 Letter, the first date the Plans knew or had reason to know that Nu Image was refusing to make Residual Contributions.  Until that letter, the Plans had every reason to believe that Nu Image was complying with its Residual Contribution obligation given the undisputed fact that Residual Contributions are typically paid two-to-three years after submission of Plan Signatory Documents and here, third party Residual Contribution payments, negotiated for by Nu Image, masked any non-payment by Nu Image.  The Plans thus acted reasonably by following its usual audit cycle, demanding an audit in October 2009 and filing suit in May of 2013.  Nu Image's arguments to the contrary are misleadingly disconnected from the undisputed facts.

**B.    THE PLANS COULD NOT SLEEP ON ITS RIGHTS PRIOR TO 2006, BECAUSE NU IMAGE WAS NOT A PLAN PARTICIPATING EMPLOYER PRIOR TO 2006**

Nu Image disingenuously embellishes the Laches Defense by suggesting that the Plans had failed to audit approximately twenty unidentified motion pictures Nu Image *alleges* it had produced pursuant to the Basic Agreement between 1996 and May 2006. Motion, p. 18, lns. 13-16.  This is about as bald a misrepresentation as Nu Image could advance without engaging in an outright lie.

---

[14]Moreover, any such argument by Nu Image, cannot stand as a basis for summary judgment.  Although Nu Image's witnesses testified that the 2006 "IATSE" negotiators Miller, Loeb and Tom Short assured Nu Image that it would not have to make Residual Contributions, both Miller and Loeb testified under oath that these representations were not made (AUF, No. 75) creating at a minimum disputed material fact that would deny Nu Image summary adjudication.

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

1   The Plans never audited or demanded Residual Contributions for any alleged

2   Pre-2006 Pictures for the very simple reason that Nu Image had never signed Plan

3   Signatory Documents or applied to be a Plan participating employer prior to May

4   2006. AUF, No. 58.  Nu Image's Motion attempts to avoid this undisputed fact by

5   virtue of the carefully crafted, highly finessed, and unforgivably vague declarations

6   of Trevor Short and Avi Lerner,[15] which state:

7   Trevor Short: "Based on my recollection and from my review of Nu Image's

8   records, between approximately 1996 and 2006 ***Nu Image and/or one of its***

9   ***single-purpose production entities*** entered into the applicable Producer-

10   I.A.T.S.E. and M.P.T.A.A.C. Basic Agreement and the related Trust

11   Agreements with the Motion Picture Industry Health and Pension Plans (the

12   "Plans") (together the "Basic Agreement") on a picture-by-picture basis for

13   nearly 20 motion picture productions." [emphasis added]

14   Avi Lerner:  "Between 1995 and 2006, Nu Image also produced at least 20

15   movies that were produced under agreements with IATSE – "Union" movies.

16   In each such case, ***it is my understanding that Nu Image or the specific***

17   ***production company concerned*** entered into agreements that incorporated the

18   applicable Producer-I.A.T.S.E. and M.P.T.A.A.C. Basic Agreement and the

19   related Trust Agreements with the Motion Picture Industry Health and

---

22   [15]The Plans have concurrently filed Evidentiary Objections to the

23   fundamentally flawed testimony of Mr. Lerner and Mr. Short, on the grounds of

24   lacks foundation,  irrelevance and the Best Evidence Rule. The Plans contend that

25   this Court should not consider these unspecific recollections as evidence of the

26   contents of any such alleged agreements. *See e.g.*, United States v. Ross, 33 F.3d

27   1507, 1513 (11th Cir. 1994)["the purpose of the best evidence rule is to prevent

28   inaccuracy and fraud when attempting to prove the contents of a writing."].  That

said, the Plans address Nu Image's non-specific commentary with an abundance of

caution, while reserving objections to their admission as evidence.

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION

Pension Plans (the "Plans") (together a "Basic Agreement")"[Emphasis added].

It cannot be emphasized enough that neither Lerner nor Trevor Short testify that **_Nu Image_** was a signatory or participating employer of the Plans prior to May of 2006. Both, obfuscate this critical fact.   Neither Lerner nor Trevor Short identify the names of the motion pictures or the names of the alleged single-purpose entities, nor attach any signatory documents which would support a claim that Nu Image executed Plan Signatory Documents prior to May of 2006.   Succinctly stated, Nu Image presents no actual evidence in support of its factual contentions.[16]

During discovery, after being pressed by Plan counsel, Nu Image mentioned a few motion pictures which it claimed had been produced subject to the Basic Agreement prior to 2006: _Home of the Brave, Guinevere, No Code of Conduct, Top of the World, 88 Minutes_ and _Edison_.  AUF, No. 56. For each of these Pre-2006 Pictures, the Plans have researched their records, and confirmed that the Plan Signatory Documents **_were not in fact_** executed by Nu Image, but by a separate entity altogether.[17] AUF, No. 57.  Nu Image did not sign, and was not contractually obligated to the Plans by virtue of any of these agreements. AUF, No. 58. Moreover, these Pre-2006 agreements provide no factual basis to support Nu Image's allegation that it was involved in the production of these films. Id.

A quick comparison of these identified Pre-2006 agreements, with the Nu Image agreements giving rise to this dispute, demonstrates the frivolous nature of

---

[16] To the extent Nu Image attempts to remedy this glaring omission in its Reply, this Court should not consider any such evidence. _See e.g._, Lujan v. National Wildlife Federation 497 U.S. 871, 894-895 (1990).

[17] The Plans concurrently filed copies of the signatory agreements for these Pre-2006 Pictures as exhibits to the Declaration of J. Ramas In Opposition To Nu Image's Motion For Summary Adjudication. _See_, AUF, No. 59, Exhibit L.

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

Nu Image's argument.  For each of the currently disputed motion pictures, Nu Image executed a specific Memorandum of Agreement which identified the motion picture to be covered by the Basic Agreement, identified the name of the Nu Image controlled entity, referenced the underlying May 2006 agreement between Nu Image and the IATSE, and contained a promise by Nu Image that it would guarantee the obligations of its controlled entities under the Basic Agreement.  AUF, No. 59. Most importantly, Nu Image actually executed each of these Post-2006 agreements and assumed the contractual obligations to the Plans. These agreements create the Plans' contractual and statutory right to sue Nu Image for unpaid Residual Contributions.

In the Motion, Nu Image does not argue that the Plans should have attempted to claim that Nu Image was the alter ego of these pre-2006 signatory producers it allegedly controlled.  Even Nu Image would likely acknowledge that such an argument would be both unwarranted and unjustified.  *See* Hawaii Laborers, CIV. 13-00320 SOM/KS, 2013 WL 6572583 (D. Haw. Dec. 13, 2013) ["The distinct juridical personality of an entity is not a mere legal nicety.  Unless there is strong evidence to the contrary, [a Court] must conclude that such boundaries were intended to have some meaning, and they are not to be casually disregarded"]. Absent Plan Signatory Documents executed by Nu Image, the Plans had no right to demand Residual Contributions from Nu Image for the Pre-2006 Pictures.  Since it is undisputed that Plan Signatory Documents are required, only the unspecified signatory entities were approved as participating employers to the Plans; not Nu Image.  AUF, Nos 57-58.

The alleged pre-2006 practice of unspecified entities provides Nu Image with no basis for claiming that the Plans slept on their rights as against Nu Image. Absent executed Plan Signatory Documents, the Plans had no reason to believe there existed a cause of action for beach of the Plan Signatory Documents against

Bush Gottlieb
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

Nu Image.   A party cannot sleep on contractual rights, unless and until such contractual rights exist. <u>City of Davis v. Coleman</u>, 521 F.2d 661, 677 (9th Cir. 1975)["An indispensable element of lack of diligence is knowledge, or reason to know, of the legal right, assertion of which is 'delayed.'"]  Having no real basis to allege delay, Nu Image thus makes generalized and factually unsupported allegations involving practices that pre-date Nu Image's contractual and statutory obligation to the Plans.   To make such argument, based on applicable law, is untenable.  To do so without providing clear notice to the Court, flirts with Rule 11.

### C.   THE PLANS TIMELY FILED SUIT TO COMPEL PAYMENT OF PAYROLL CONTRIBUTIONS

Nu Image's Motion asks the Court to conclude that the Plans' claims for Payroll Contributions for nine titles (collectively, the "**Payroll Contribution Pictures**") are barred by the Laches and Limitations Defenses, this time suggesting that the four-year period commenced on the date Nu Image made its last payroll payment for one of the covered employees.  Nu Image apparently suggests that this last payroll payment, triggering the last Payroll Contribution payment, should have placed the Plans on notice that Nu Image was failing to make the additional Payroll Contributions demanded by the Plans for the Payroll Contribution Pictures.

The first flaw in Nu Image's argument is that the Motion fails altogether to apprise the Court of the nature of the Plans' Payroll Contributions claim.  The payroll audits for each of the for the Payroll Contribution Pictures were announced by the Plans on May 14, 2009 or later  and were completed only in 2011 or later. <u>AUF</u>, No. 60.  It usually takes one-to-six months for the auditors to even begin fieldwork on a payroll audit.  <u>AUF</u>, No. 61.

The audits disclosed that Nu Image was failing to make Payroll Contributions for many of the employees who had performed work covered by the Basic Agreement. <u>AUF</u>, No. 62 and under reported contributions on other employees.  The

B<small>USH</small> G<small>OTTLIEB</small>
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

1   Plans would not have been able to discern these underpayments from the payroll

2   contribution reports that Nu Image had submitted to the Plans for the Payroll

3   Contribution Pictures.   AUF, No. 63.  Absent an audit, the Plans had no means to

4   know about these delinquencies. Id.

5        Assuming conservatively that the Plans' auditors could have discovered this

6   underpayment almost immediately after the Plans' announced these audits -- May

7   14, 2009 at the earliest -- the Plans filed suit for unpaid payroll contributions on

8   May 6 2013, within the four-year period of the statute of limitations and any safe-

9   harbor period for the doctrine of laches.

10

11       **D.    RESIDUAL CONTRIBUTIONS WERE TRIGGERED FOR *DAY
             OF THE DEAD* AND *TIL DEATH***

12       The Motion also seeks to foreclose on the collection of any Residual

13   Contributions for two motion pictures, based on its argument that the obligation was

14   not "triggered" because the picture was produced outside the thirteen western

15   United States and the producer had not hired two or more employees subject to the

16   Basic Agreement ("**Triggered**").  The facts Nu Image offers in support of these

17   claims are disputed by evidence and, at a minimum, summary adjudication is not

18   available on that basis.

19       In conducting an audit of Nu Image books and records, Plan auditors closely

20   review documentation to confirm that an applicable motion picture Triggered.

21   In connection with *Day of the Dead*, the records demonstrated that all thirty five of

22   the reported employees were working under the Basic Agreement in classifications

23   that are represented by IATSE Locals with offices in Los Angeles County: including

24   eight from Local 600 (camera), seven from Local 80 (Grips) and eight from Local

25   728 (Lighting Technicians). AUF, No. 64.  While the majority of production of *Day*

26   *of the Dead* took place in Bulgaria, 34 of the employees for whom payroll

27   contributions were made had worked between 8 and 41 hours either the last week of

28

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

September 2006 or a week in the second half of December 2006, on additional scenes filmed in Los Angeles County.  AUF, No. 65.  The hours reported for the 34 employees on *Day of the Dead* therefore, was work performed in Los Angeles County under the Basic Agreement; these employees were by definition constitute "Individuals subject to the Basic Agreement" within the meaning of Article XIX, Sections (c)(1)( iii) and (c)(3)(i) and Article XXVIII, Sections (c)(1)( iii) and (c)(3)(i) of the Basic Agreement, and their work Triggered Nu Image's Residual Contribution obligation. AUF, No. 66.

The same Plan audit work revealed that, on *Til Death*, one of the Triggering employees for whom Payroll Contributions were made was Douglas Milsome, an IATSE Local 600 camera person who has had Payroll Contributions reported into the Plans and whose Plan records identified a Los Angeles County residence, and for whom the hourly contribution rate paid by the producer indicated that he was a West Coast member of IATSE Local 600.[18]  AUF, No. 68.  Another Triggering employee on *Til Death* was Martina Kohl, an IATSE Local 706 make-up or hair stylist with a long history of Payroll Contributions to the Plans and Plan records identifying a Los Angeles County residence.  AUF, No. 69.  Kohl and Milsome were therefore, by definition, "[i]ndividuals subject to the Basic Agreement" within the meaning of Article XIX, Sections (c)(1)( iii) and (c)(3)(i) and Article XXVIII, Sections (c)(1)( iii) and (c)(3)(i) of the Basic Agreement and Triggering Nu Image's Residual Contribution obligation. AUF, No. 70.  Thus, at a minimum, a triable issue of fact remains on whether Residual Contributions were Triggered on these motion pictures.

---

[18] As opposed to an East Coast member of Local 600 who would not Trigger the Residual Contribution obligation.

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

1

### E.   NU IMAGE OWES RESIDUAL CONTRIBUTIONS ON BEYOND A REASONABLE DOUBT

In continuing its strategy of hiding evidence from the Court, the Motion exclaims that Nu Image did not produce the motion picture *Beyond a Reasonable Doubt* (Nu Image Statement, No. 64), but fails to disclose that it signed a Memorandum of Agreement with the IATSE, where Nu Image expressly undertook the obligating to make both Payroll and Residual Contributions to the Plans.   AUF, No. 72.

Nu Image denies that it received revenue from the film (Nu Image Statement, No. 64), but Avi Lerner confirmed that Nu Image executed the Memorandum of Agreement assuming the responsibility to make Residual Contributions, and that Nu Image had sold exploitation rights to a German distributor ProSabien for $1.5 to $2.0 million. AUF, No. 73.  Even if Nu Image did not personally receive these funds, it promised to pay Residual Contribution to the Plans for all revenue generated from the exploitation of the picture in Residual Markets.

### F.   THE FIRST CAUSE OF ACTION IS NOT MOOT BY VIRTUE OF NU IMAGE'S TARDY PRODUCTION OF INFORMATION DURING DISCOVERY

The Plans' First Cause of Action asked the Court to order Nu Image to permit complete audit access to the Plans' auditors.  This Cause of Action was necessary because as of the date the Complaint was filed, Nu Image had not provided the Plans with access to the books, records, documents and information necessary for the Auditors to determine whether Nu Image had fulfilled its contribution obligations and the amount of additional contributions Nu Image owed to the Plans.   AUF, No. 74.  Since the filing of the Complaint, Nu Image has provided such essential records by means of responding to discovery propounded by the Plan counsel.  As of the date of the deposition of lead Plan Auditor Kyle Uemura, Mr. Uemura could finally

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

testify that he had been given sufficient access to Nu Image information to finalize his audit findings.

Nonetheless, the First Cause of Action remains viable because the Plans were forced to incur legal fees and audit fees prior to the filing of the Complaint, and thereafter, to force Nu Image to comply with its audit obligations.  ERISA and the Plan Trust Agreements require payment of such legal and audit fees.  <u>AUF</u>, No. 77.  Accordingly, the First Cause of Action is not moot as it will support the Plans' claims for these legal and audit fees.

## IV.   CONCLUSION

Nu Image unabashedly flirts with violating Rule 11 by advancing factual contentions wholly unsupported by evidence, and advancing legal argument, that is not supported by governing law.

To further this end, Nu Image advances bizarre allegations, concerning outlandish time periods that precede the earliest date Nu Image had any contractual obligation to the Plans.   Of course, Nu Image provides no transparency, or actual evidence, that would support its Pre-2006 claims.  Instead, Nu Image rests on carefully crafted, highly finessed, and unforgivably vague and generalized testimony by Nu Image officers – which when actually read – really don't say anything at all.

Nu Image fails to proffer just one Plan document that Nu Image executed which could attempt to support its fictional tale of decades long non-action by the Plans against Nu Image.  Further, unlike after October 2006, Nu Image has no evidence that the Plans ever approved Nu Image's participation in the Plans prior to the 2006 Plan Signatory Documents.  Nu Image also wastes pages on a similarly unsupported narrative concerning the Estoppel Defense, irrelevant to its timeliness claims, and likely presented to have a collateral effect on the Plans' Motion for Partial Summary Judgment on the Estoppel and Laches Defense.

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION

The standard for summary judgment under the Federal Rules of Civil Procedure cannot be impacted by Nu Image's storytelling.   Rather, Nu Image must demonstrate that there is no general dispute of material *facts* – evidence, not legal argument.  Nu Image fails to present such evidence in support of its burden, and certainly at a minimum, the Plans have presented evidence that presents a triable issue as to each of Nu Image's arguments.

Indeed, Nu Image cannot present evidence of undue delay for the simple reason because there is no evidence of such delay to present.  On October 6, 2014, the Plans filed a Motion for Partial Summary Judgment seeking to have the Laches Defense dismissed, and also challenged the factually unsupported Estoppel Defense. The Plans' motion is currently pending, to be heard on November 3, and based on the uncontroverted, material evidence and governing law, this Court should grant the Plans' motion.  Nu Image's Motion must be denied.

DATED: October  20, 2014                      BUSH GOTTLIEB, A Law Corporation


By:          /s/ *David Adelstein*
             _____
             DAVID ADELSTEIN
             DAVID E. AHDOOT
             Attorneys for Plaintiffs
             DIRECTORS OF THE MOTION PICTURE
             INDUSTRY PENSION PLAN AND
             DIRECTORS OF THE MOTION PICTURE
             INDUSTRY HEALTH PLAN

BUSH GOTTLIEB
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

502188.5  11011-19033

PLAINTIFFS' OPPOSITION TO NU IMAGE'S MOTION FOR SUMMARY ADJUDICATION