UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Lisa Gonzalez | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| David Ahdoot | Barbara Fitzgerald |
| Peter Dickinson | Nicole Diller |
| Kirk Prestegard | Donald Havermann |

**Proceedings:** PLAINTIFFS DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT (dkt. 65, filed October 6, 2014)

DEFENDANT NU IMAGE INC'S MOTION FOR SUMMARY ADJUDICATION (dkt. 69, filed October 10, 2014)

DEFENDANT NU IMAGE INC'S MOTION TO AMEND THE COURT'S SCHEDULING ORDER AND FOR LEAVE TO AMEND FIRST AMENDED ANSWER (dkt. 68, October 10, 2014)

## I.    INTRODUCTION

On May 6, 2013, plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors the Motion Picture Industry Health Plan (collectively, "Plans") filed suit against defendant Nu Image, Inc., an independent film production company. Dkt. 1. The operative first amended complaint ("FAC"), filed December 13, 2013, asserts the following claims: (1) failure to comply with audit obligations pursuant to 29 U.S.C. §1132(g)(2)(E) of the Employee Retirement Income Security Act ("ERISA"); (2) violation of ERISA Section 515, 29 U.S.C. §1145, for failure to make residual contributions to the Plans; (3) violation of ERISA Section 515, 29 U.S.C. §1145, for failure to make certain payroll contributions to the Plans; and (4) breach of contract in violation of Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185(a).  Dkt. 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

In brief, the Plans allege that pursuant to several collective bargaining agreements, defendant is obligated to remit pension and health contributions to the Plans when defendant makes films utilizing labor from certain unions. FAC ¶ 8. According to the Plans, defendant has failed to make certain payments on the following twenty-one films: *16 Blocks*; *Bad Lieutenant: Port of Call New Orleans*; *Beyond a Reasonable Doubt*; *Blonde Ambition*; *The Cleaner*; *The Code*; *Day of the Dead*; *The Expendables*; *Til Death*; *Homeland Security*; *King of California*; *Leatherface 3D (Texas Chainsaw Massacre)*; *Labor Pains*; *Mad Money*; *Major Movie Star*; *Microwave Park*; *New Orleans*; *Olympus Has Fallen*; *Righteous Kill*; *Solitary Man*; and *Wicker Man*. Id. ¶ 10.

On October, 6, 2014, plaintiffs filed a motion for partial summary judgment on defendant's affirmative defenses of estoppel and laches. Dkt. 65. Defendant opposed the motion on October 13, 2014, dkt. 70, and plaintiffs replied on October 20, 2014, dkt. 77.

On October 10, 2014, defendant filed a motion for summary adjudication. Dkt. 69. Defendant seeks summary adjudication of the following claims: (1) plaintiffs' first claim for an order compelling Nu Image to provide documents to plaintiffs' auditors; (2) plaintiffs' second and fourth claims as to residual contributions for the seven films *Blonde Ambition, The Cleaner, Day of the Dead, King of California, Mad Money, Til Death,* and *Wicker Man*; (3) plaintiffs' third and fourth claims for payroll contributions as to the nine films *16 Blocks, The Cleaner, The Code, Day of the Dead, Double Identity, Mad Money,*[1] *Rambo IV*, *Shark in Venice*, and *Wicker Man.* Defendant argues that plaintiffs' first claim is moot, plaintiffs' second, third and fourth claims are barred by the statute of limitations, and plaintiffs' second and fourth claims are barred by the doctrine of laches. Id. Plaintiffs opposed this motion on October 20, 2014, dkt. 86, and defendant replied on October 27, 2014, dkt. 97.

In conjunction with their motion for summary adjudication, defendant also filed a motion for leave to amend the Court's scheduling order and to add an affirmative defense to their amended answer pursuant to Federal Rules of Civil Procedure 15 and 16. Dkt. 68. Specifically, defendant seeks to add a statute of limitations affirmative defense—a defense that forms the primary basis for defendant's motion for summary adjudication.

---

[1] Defendant notes that this film was "misidentified by plaintiffs as *New Orleans*." Def. Motion SJ at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

Plaintiffs opposed defendant's motion on October 20, 2014, dkt. 79, and defendant replied on October 27, 2014, dkt. 98.[2]  The Court heard oral argument on November 10, 2014.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[2] In addition, both parties filed evidentiary objections to the opposing party's moving papers.  Defendant seeks to exclude certain statements in the declaration of Hank Lachmund, one of plaintiffs' 30(b)(6) witnesses, as well as certain statements in the declaration of Kyle Uemura, an accountant with the firm retained by plaintiffs to audit defendant's contributions to the Plans.  Def's Evid. Obj'ns.  The Court does not rely on the portions of the declarations cited by defendant and, accordingly, the Court OVERRULES defendant's objections as moot.

Plaintiffs object to two categories of evidence—testimony of Nu Image executives Trevor Short and Avi Lerner, and the expert report of Rob Aft.  Pls' Evid. Obj'ns.  With regard to the latter, the Court does not rely on the expert report in deciding defendant's motion and therefore OVERRULES this objection as moot.  With regard to the former, plaintiffs object to the executives' testimony regarding the alleged existence of at least twenty movies produced by Nu Image and / or companies controlled by Nu Image pursuant to IATSE agreements between 1996 and 2006.  See Id.  Plaintiffs assert that this testimony lacks foundation, is irrelevant, and should be excluded pursuant to the best evidence rule.  Id.  First, the testimony is clearly relevant to Nu Image's estoppel defense, since it speaks to why Nu Image allegedly believed that IATSE representatives had the authority to bind the Plans to alleged oral assurances that residuals need not be paid.  Second, the Court finds that Short and Lerner have sufficient foundation to testify regarding the business practices of the company they manage.  However, to the extent that Short and Lerner testify to the contents of these pre-2006 IATSE agreements—namely, that they contained terms requiring the payment of residuals—this testimony violates the best evidence rule and plaintiffs' objections are SUSTAINED.  See Fed. R. Evid. 1002. ("An original writing, recording, or photograph is required in order to prove its content . . . ).  Plaintiffs' objections to other portions of Short and Lerner's testimony are OVERRULED as moot, since the Court does not rely on this testimony in ruling on defendant's motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

## II.  BACKGROUND

The following relevant facts are not in dispute.  Plaintiffs, Directors of the Motion Picture Industry Pension and Health Plans (the "Plans"), are responsible for jointly managing Taft-Hartley pension and health funds for the benefit of 56,000 employees and retirees in the entertainment industry.  Pls' Mot. Summ. J. at 1.  The Plans are managed by a Board of Directors consisting of thirty-two Directors, equally divided between those appointed by participating labor unions and those appointed by management.  Def's Response to Pls' Uncontroverted Facts ("DRPUF") ¶ 5.  The unions that participate in the Plans include the International Alliance of Theatrical and Stage Employees ("IATSE"), the International Brotherhood of Teamsters, the Basic Craft unions, and a few others.  Id. ¶ 6.

Defendant Nu Image is a full-service independent production company that produces and markets films domestically and internationally.  Pls' Response to Def's Uncontroverted Facts ("PRDUF") ¶ 1.  Nu Image typically produces films through single-purpose production entities that it owns or controls.  Id. ¶ 2.  Nu Image, like most other independent producers, earns revenues through licensing its films' distribution rights to multiple third-party distributors in territories around the world.  Id. ¶ 3.

In May 2006, Nu Image negotiated and executed a collective bargaining agreement ("CBA") with IATSE, by the express terms of which Nu Image agreed to be bound by the IATSE-Producer Basic Agreement ("Basic Agreement") and separate Pension and Health Declarations of Trust ("Trust Agreement") (collectively, these three documents are referred to herein as the "Overall Agreement").  DRPUF ¶ 1.  Also in May 2006, Nu Image executed the industry standard Agreement of Consent, a Trust Acceptance Agreement, and the 2004-2007 Low Budget Theatrical Agreement (collectively, the "Plan Signatory Documents").  Id. ¶ 2.  These Plan Signatory Documents were submitted to the Plans as part of Nu Image's application to become a participating employer in the Plans.  Id. ¶ 3.  On September 13, 2006, the Plans' Legal Committee approved Nu Image's application.  Id. ¶ 12.  In executing these documents in 2006, Nu Image became a signatory to the Basic Agreement not for specific films, but with respect to all future films produced by Nu Image within the jurisdiction of the Basic Agreement.  PRDUF ¶ 8.

The Plan Signatory Documents call for two types of employer contributions to the Plans—payroll contributions and residual contributions.  DRPUF ¶ 15.  Payroll

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

contributions refer to payments typically tied to the number of hours worked by qualifying union members on any given production. Id. ¶ 17. Residual contributions are payments based on film revenue generated in secondary markets such as video, free television, and pay television. Id. ¶ 18. Employers are responsible for self-reporting residual contributions, and are required to submit self-generated reports showing their residual contribution payments and gross receipts on films. Id. ¶ 73. The Plans rely on employers to report this information. Id.

Between 2006 and 2009, Nu Image did not pay, and the Plans did not seek to collect, residual contributions. On or about October 12, 2009, the Plans' outside audit firm Nigro Karlin Segal and Feldstein ("NKSF") recommended to the Plans that it audit the residual contributions being made by Nu Image. Id. ¶ 42. NKSF's recommendation was most likely triggered when NKSF discovered a problem with residual contributions while examining the books and records of Nu Image during an audit of Nu Image's payroll contributions on a single film. Id. ¶ 43. On October 13, 2009, the Plans wrote to Avi Lerner, Nu Image's CEO, and informed him that the Plans had engaged NKSF to audit Nu Image's books and records concerning its residual contributions. Id. ¶ 44.

On November 10, 2009, Nu Image executive Trevor Short responded via letter to the Plans, objecting to the proposed audit and claiming that Nu Image had been assured by representatives of IATSE during the 2006 negotiations that Nu Image would not be required to make residual contributions. Id. ¶ 44; PRDUF ¶ 15. Ultimately, however, Nu Image cooperated with the audit, agreeing to toll the statute of limitations as to residual payments between December 17, 2010 and April 16, 2012. PRDUF ¶ 21. The Plans filed suit on May 6, 2013, seeking to collect residuals and payroll contributions allegedly owed by Nu Image as revealed by the NKSF audit.

The content, scope, and consequences of the 2006 negotiations between Nu Image and IATSE officials—which culminated in the signing of the Overall Agreement and Plan Signatory Documents in May 2006—are vigorously disputed by the parties. Nu Image contends that, in April 2006, Matt Loeb, an IATSE official, and Tom Short and Mike Miller—IATSE President and Vice President, respectively, as well as Directors of the Plans—promised that, in exchange for agreeing to be subject to the terms of the Overall Agreement and Plan Signatory Documents for all films produced in the future, Nu Image would be excused from making residual contributions to the Plans. See generally Def's Additional Uncontroverted Facts("DAUF"). The Plans dispute whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

any of these promises were made and, even assuming they were made, assert that neither Loeb, Short, nor Miller had the authority to bind the Plans to such promises, let alone to contradict the plain language of the agreements ultimately signed by Nu Image in May 2006. See generally Pls' Statement of Ucontroverted Facts ("PSUF").

The parties also vigorously dispute the facts related to the pre-2006 relationship between the Plans and IATSE on one side, and Nu Image on the other. Defendant's executives testify that, between 1996 and 2006, Nu Image entered into a series of single-project agreements with IATSE on nearly 20 films, through which Nu Image agreed to be bound by substantially the same residual and payroll contribution requirements contained in the 2006 Overall Agreement and Plan Signatory Documents. Def's Statement of Undisputed Facts ("DSUF") ¶¶ 4-7. According to Nu Image, it never paid, and the Plans never sought to collect, residual payments for these pre-2006 films. See generally DSUF.

Defendant devotes significant time arguing that, because the Plans allegedly did not collect residuals on any of these pre-2006 films, Nu Image was justified in relying on the alleged promises of Loeb, Miller, and Short and in not paying residuals on post-2006 films made pursuant to the Overall Agreement and Plan Signatory Documents. However, defendant has not produced any of these single-project agreements, and plaintiffs dispute not only whether Nu Image signed them but, more fundamentally, whether any alleged pre-2006 course of conduct is relevant to the parties' rights under the 2006 agreements. The Court notes that the pre-2006 factual record is anything but clear.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

"conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

As a preliminary matter, defendant's motion for summary judgment raises the affirmative defense of the statute of limitations—a defense that was not pled by defendant in either its original or amended answer. If a defendant does not assert a statute of limitations defense in its answer, that defense is presumptively waived. See Fed. Rule Civ. P. 8(c)(1); Jones v. Bock, 549 US 199, 212 (2007); In re Adbox, Inc., 488 F3d 836, 842, n.2 (9th Cir. 2007). "In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment." Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993); see also Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010) ("[A]bsent prejudice to the plaintiff, the district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion.").

Here, plaintiffs assert that defendant's delay has prejudiced them in two ways. First, plaintiffs contend that defendant's delay "prejudiced the Plans' ability to affirmatively remove the statute of limitations as a triable issue." Opp'n Mot. Amend at 6. However, plaintiffs cite to no authority for the proposition that this constitutes prejudice, and the Court has found none. Moreover, the authority plaintiffs do cite for a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

"presumption of prejudice" is from a dissent to an opinion in which the majority actually found that it constituted an abuse of discretion for the district court to strike a defectively plead claim. See United States v. $11,500.00 in U.S. Currency, 710 F.3d 1006, 1012 (9th Cir. 2013).

Second, plaintiffs argue that they have been prevented from conducting discovery into defendant's statute of limitations defense. Id. at 6. Defendant's statute of limitations defense is partially founded upon its assertion that, because residual payments are typically made in the calendar quarter after a producer, such as defendant, has delivered its completed film to a distributor and received full licensing payments, plaintiffs should have been on notice that defendant was not making residual payments long before 2009. See Def's Mot. Summ. J. Plaintiffs assert that to counter this defense they need to conduct discovery into when Nu Image delivered its films to distributors and received the related licensing payments. Opp'n Mot. Amend at 6. However, as discussed in greater detail *infra*, it is unclear to the Court how defendant's internal business records could have provided plaintiffs with notice of defendant's nonpayment of residuals. Deprivation of the opportunity to discover irrelevant facts is not prejudicial.

Moreover, defendant pleads a laches defense in both its original and amended answers. As the Ninth Circuit has explained, "[w]hile laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period for the analogous action at law." Jarrow Formulas v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002). This overlap and plaintiffs' undisputed notice of the laches defense further undermines any prejudice argument.

Because plaintiffs have failed to demonstrate prejudice, the Court finds that defendant has not waived its statute of limitations defense and has properly raised the defense in its motion for summary judgment. In light of this, the Court DENIES as moot defendant's request for leave to amend its complaint.[3]

---

[3] Relying on the Ninth Circuit's decision in Camarillo, Nu Image asserts that it only filed its motion to amend "[i]n an abundance of caution." Def's Mot. Summ. J. at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

### A. Plaintiffs' Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on defendant's laches and equitable estoppel defenses.

### 1. Equitable Estoppel

The defense of equitable estoppel consists of the following elements:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Bob's Big Boy Family Restaurants v. NLRB, 625 F.2d 850, 854 (9th Cir.1980) (quoting Hampton v. Paramount Pictures Corp., 279 F.2d 100 (9th Cir.1960)).

In the Court's February 28, 2014 order denying plaintiffs' motion to strike Nu Image's estoppel defense, the Court noted the presence of divergent authority regarding whether such a defense may be asserted based upon oral representations of a plan fiduciary. Dkt. 43; compare Audit Servs., Inc. v. Rolfson, 641 F.2d 757, 761 (9th Cir. 1981) ("Because the documentary evidence was clear and unambiguous, the district court properly rejected contradictory extrinsic evidence."); Sprague v. Gen. Motors Corp., 133 F.3d 388, 402 (6th Cir. 1998) ("Our court has consistently refused to recognize oral modifications to written plan documents.") with Teamsters & Employers Welfare Trust v. Gorman Bros. Ready Mix, 283 F.3d 877, 883 (7th Cir. 2002) (Posner, J.) (noting that equitable estoppel may be available based on "words or conduct by a responsible official of the plan itself"); Ill. Conf. of Teamsters and Employers Welfare Fund v. Mrowicki, 44 F.3d 451, 462-63 (7th Cir. 1994) (assuming that equitable estoppel could be asserted based on statements by agent of a benefit trust). The Court determined that it would be "more appropriate to determine the availability of this defense after the parties have had an opportunity to develop the factual record." Dkt. 43.

In Ill. Conf. of Teamsters and Employers Welfare Fund v. Mrowicki, the Seventh Circuit explained the authority of employee benefit plan trustees as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**             'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

Under ERISA, a trust agreement providing for more than one fiduciary must provide for joint authority to control and manage the operation and administration of the plan. [Mason & Dixon Lines, Inc. v. Glover, 975 F.2d 1298, 1303 (7th Cir. 1992)] (citing 29 U.S.C. § 1102(a)(1)). Where a fund's assets are held by two or more trustees, ERISA provides that the trustees "'shall jointly manage and control the assets of the plan . . . '" Id. (quoting 29 U.S.C. § 1105(b)(1)(B)). The common law of trusts defines the scope of authority and responsibility of plan trustees, and under trust law the exercise of joint powers requires the action of all trustees. Id. The trustees may delegate authority to an agent to perform certain acts. Id. In addition, an agent may bind his principal through the exercise of apparent authority, which "'arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf.'" Id. (quoting Bank of North Carolina, N.A. v. Rock Island Bank, 630 F.2d 1243, 1251 (7th Cir.1980)). "Where the principal places an agent in a situation where the agent may be presumed to have authority to act, his principal is estopped against a third party from denying the agent's apparent authority." Id. (citing Rock Island Bank, 630 F.2d at 1251). In determining whether apparent authority exists, "courts focus on the acts of the principal." Id. (citing Rock Island Bank, 630 F.2d at 1251; State Security Insurance Co. v. Burgos, 145 Ill.2d 423, 164 Ill.Dec. 631, 635, 583 N.E.2d 547, 551 (1991)).

44 F.3d 451, 462-63 (7th Cir. 1994). In Mrowocki, an employer claimed he was not obligated to make certain contributions to union trust funds, as outlined in written agreements, because a union official had told him he would not be obligated to make the contributions, and two fund trustees—who were present when these representations were later reiterated at a union meeting—did not object. 44 F.3d at 462-465. The court denied the employer's estoppel defense for two reasons. First, it was undisputed that the union official was not a fund trustee at the time the statements were made, and thus he could not have acted with the authority to bind the trust. Id. at 464. Second, the court rejected the employer's argument that "simply because Gauwitz and Redding were Fund trustees, they appeared to have authority to act for the Fund . . . [and] thus, the Fund should be estopped from denying that they had authority to act on its behalf." Id. The court reasoned that "the fatal flaw in [t]his argument is that [the employer] makes no claim that Gauwitz or Redding represented to him either that they were attending the meeting in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

their capacities as Fund trustees, or that they had authority to act on behalf of the Fund to absolve [the employer] from its obligations." Id. At bottom, the court explained that "[t]here is nothing in this case to suggest that the Fund, through the behavior of Gauwitz and Redding or otherwise, acted in any way to lead [the employer] to believe that its trustees had authority to act on its behalf." Id.

In Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix, 283 F.3d 877, 885 (7th Cir. 2002), the Seventh Circuit similarly found that an employer could not reasonably rely on oral statements allegedly made by "the head of the local union and the chairman of the welfare trust" to the effect that the employer would not be required to make delinquent contributions to the trust. Assuming for the sake of argument that the chairman had indeed made these statements, Judge Posner reasoned that the employer "had no reason to think [the chairman] authorized to modify a collective bargaining agreement orally or to waive orally the entitlements of the welfare plan." 283 F.3d at 885. As Judge Posner explained, the employer "must have been gambling that [the chairman] would be able to keep the Teamsters trust off his back. An unsuccessful gamble is not a form of reasonable reliance." Id.

Defendant claims that, in an April 2006 breakfast meeting between Nu Image executives—Avi Lerner, Trevor Short, and John Thompson—and IATSE officer Matt Loeb and IATSE Vice President and plan trustee Mike Miller, Miller and Loeb told Nu Image that they would not seek residual contributions from Nu Image if the company signed the Overall Agreement. Def's Mot. Summ. J. at 5. Nu Image asserts that its executives believed that Miller and Loeb had the requisite authority to bind the Plans. DRPUF ¶ 30. Defendants further assert that at a subsequent dinner meeting between Nu Image executives and IATSE President and plan trustee Tom Short, Tom Short confirmed Loeb's prior representations that Nu Image would not be required to pay residuals. Id. ¶ 33, 34. Defendant asserts that its executives believed that Tom Short had power to bind the Plans. Id. ¶ 35. Moreover, Nu Image argues that these promises were credible in light of the fact that IATSE and the Plans allegedly never sought to collect residuals on movies produced by Nu Image between 1996 and 2006.

While it is a close question, it appears that defendant has raised sufficient disputed issues of material fact to preclude the granting of summary judgment. Absent evidence regarding the pre-2006 agreements, the Court does not have sufficient information regarding the bargaining history between the parties to determine whether Nu Image

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

reasonably relied on the claimed representations that no contributions would be due on residual payments. A reasonable trier of fact could conclude based on the pre-2006 course of dealing that Nu Image reasonably relied on these claimed representations.[4] Second, the record is also unclear as to what facts should have placed Nu Image on notice that it could not rely on the claimed representations.

Accordingly, the Court DENIES plaintiffs' motion for summary judgment with regard to defendant's estoppel defense.

### 2.      Laches

"In order to succeed on a defense of laches, a defendant must prove both: (1) an unreasonable delay by plaintiff in bringing suit, and (2) prejudice to himself." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 997 (9th Cir. 2006). "In considering whether a plaintiff's delay was unreasonable, courts consider: (1) the length of the delay, measured from the time the plaintiff knew or should have known about his potential cause of action, and (2) whether the plaintiff's delay was reasonable, including whether the plaintiff has proffered a legitimate excuse for his delay." Id. (citing Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002)).

"If a plaintiff files suit within the applicable period of limitations for his claim, there is a strong presumption that laches does not bar the claims." Id. "Conversely, if any part of the alleged wrongful conduct occurred outside of the limitations period, courts presume that the plaintiff's claims are barred by laches." Id. In the Ninth Circuit, the forum state's statute of limitations for breach of written contract claims applies to ERISA Section 515 claims as well as to claims for violation of Section 301 of the LMRA. Northern Cal. Retail Clerks Unions v. Jumbo Markets, Inc., 906 F.2d 1371, 1372 (9th Cir. 1990) and Martin v. Construction Laborer's Pension Trust for So. Cal., 947 F.2d

---

[4] The Court recognizes that it has excluded the testimony of Nu Image executives regarding the content of these alleged pre-2006 agreements. However, in order to evaluate the bargaining history of the parties, it is necessary for the Court to review these agreements. Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986) ("Cases should be decided upon their merits whenever reasonably possible.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

1381, 1384 (9th Cir. 1991), respectively. In California, the statute of limitations for a breach of written contract claim is four years. Cal. Civ. Proc. Code § 337.

As discussed in greater detail *infra*, however, the Court concludes that there is a triable issue of fact regarding whether plaintiffs' claims are barred by the statute of limitations. Consequently, the Court has no basis from which to begin its analysis of defendant's laches defense. Accordingly, the Court DENIES plaintiffs' motion for summary judgment on defendant's laches defense.

### B.     Defendant's Motion for Summary Adjudication

#### 1.     Statute of Limitations

Defendant asserts that plaintiffs' claims for both nonpayment of residuals and payroll contributions are barred by the statute of limitations. The parties agree that these claims are governed by a four-year statute of limitations, and that the statute began to run when plaintiffs knew or had reason to know of the nonpayment. However, the parties dispute when plaintiffs possessed such actual or constructive notice.

With regard to payroll contributions, Nu Image contends that plaintiffs should have been aware of any underpayment on the last day that Nu Image issued paychecks for work related to the films covered by the Basic Agreement. Def's Mot. Summ. J. at 15. These dates range from November 2005 through January 2008. Def's Undisputed Facts ("DUF") ¶ 51. By any calculation, these dates were more than four years from the time plaintiffs filed this suit in May 2013. However, plaintiffs present evidence to the effect that absent a payroll audit of the Nu Image films subject to payroll contributions, plaintiffs could not have been aware of Nu Image's allegedly deficient payments. Pls' Additional Undisputed Facts ("PAUF") ¶ 63 (citing declaration of Juanito Ramas ("Ramas Decl."), the Plans' Manager of Residuals, and Kyle Uemura ("Uemura Decl."), an accountant from NKSFP). Further, plaintiffs' evidence demonstrates that the Nu Image payroll audit was not announced—let alone completed—until May 14, 2009, PAUF ¶ 60, bringing plaintiffs' discovery of Nu Image's alleged payment deficiencies within the four-year limitations period. In light of this, the Court finds that there is a genuine issue of material fact regarding when the statute of limitations began to run on plaintiffs' payroll contribution claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

With regard to residuals, Nu Image contends that the following seven films fall outside the limitations period: *Blonde Ambition*; *The Cleaner*; *Day of the Dead*; *King of California*; *Mad Money*; *Til Death*; *Wicker Man*. Def's Mot. Summ. J. at 16-17. First, Defendant asserts that "at the latest" plaintiffs should have been aware that Nu Image had not made residual payments for these films by the end of the quarter in which the first distributor of these films paid Nu Image its full licensing fee. Id. at 16. According to Nu Image, these dates range from September 30, 2006 to December 31, 2007 and—even taking into account a stipulated 486 day tolling period—these dates are more than four years before the date this action was filed in May 2013. Id. at 16-17. However, as plaintiffs point out, there is a fundamental flaw in defendant's calculation of these dates—namely, that plaintiffs would have no reason to be aware of Nu Image's internal receipt of payments from distributors. Accordingly, these internal payments are simply irrelevant to defendant's statute of limitations defense.

Second, defendant asserts that because the Plans' Audit & Delinquency Committee receives reports for payroll and residual contributions on a bimonthly basis, plaintiffs "should know of a possible [residual] delinquency when they do not receive a report for a film produced by a signatory employer that they view as triggering residuals contribution obligations." Def's Mot. Summ. J. at 11. Defendant also proffers the deposition testimony of Hank Lachmund, a director of the Plans and one of plaintiffs' Rule 30(b)(6) witnesses. When asked if he would be surprised if the Plans received payroll contributions from a production company on a dozen films—but not residual contributions—and this error was not caught, Lachmund responded, "I'm not sure I'd be surprised. I'd be concerned about it." DUF ¶ 43.

In opposition, plaintiffs present evidence that residual contributions will not be owed for every motion picture for which payroll contributions are made. PAUF ¶ 39 (citing Ramas Decl. ¶ 10 and Uemura Decl. ¶ 11). As a consequence, plaintiffs' assert that the receipt of payroll contributions absent residual contributions does not necessarily put the Plans on notice that a company, like Nu Image, has not paid its residuals. In light of this, the Court cannot conclude as a matter of law that plaintiffs' residual claims are barred by the statute of limitations.

Accordingly, the Court DENIES defendant's motion for summary judgment as to plaintiffs' second, third and fourth claims, insofar as defendant's motion is based on the statute of limitations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

### 2. Laches

As discussed above, the Court cannot conclude as a matter of law that any of plaintiffs' claims fall outside the limitations period. And, as discussed with regard to plaintiffs' motion for summary judgment on defendant's laches defense, the Court is thus without a starting point for its analysis. In light of this, the Court DENIES defendant's motion for summary judgment insofar as it is based on laches.

### 3. Mootness

Defendant asserts that it is entitled to summary judgment on plaintiffs' first claim for relief is because it is moot. Plaintiffs' first claim for relief seeks "an Order from the Court compelling Nu Image to submit to an audit of all of Nu Image's books and records for [the] purpose of completing the Plans' residual audit." FAC ¶ 23.

"A claim is moot if it has lost its character as a present, live controversy. If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." Grand Canyon Trust v. U.S. Bureau of Reclamation, 691 F.3d 1008, 1016-17 (9th Cir. 2012) (internal citations and quotations omitted). Here, it is undisputed that the Kyle Uemura—one of the Plans' auditors who oversaw the Nu Image audit—testified that the information required to complete the audit is already in the Plans' possession. DUF ¶ 69. In opposition, plaintiffs concede that, since initiating this lawsuit in 2013, Nu Image provided the Plans with the documents required to complete the audit. Pls' Opp'n Summ. J. at 22. However, the Plans assert that this claim for relief remains viable because they incurred legal fees and audit fees to force Nu Image to comply with its audit obligations, and "ERISA and the Plan Trust Agreements require payment of such legal and audit fees." Id. at 23; PAUF ¶ 77.

The Court finds that plaintiffs' first claim for relief is moot. It is undisputed that at this point in time, plaintiffs have all the documents and information they need in order to complete the residual audit of Nu Image. Moreover, "[t]he existence of an attorneys' fees claim . . . does not resuscitate an otherwise moot controversy." M.M. v. Lafayette Sch. Dist., 767 F.3d 842, 857 (9th Cir. 2014), as amended (Oct. 1, 2014) (quoting Cammermeyer v. Perry, 97 F.3d 1235, 1238 (9th Cir.1996)) (alterations in original). Accordingly, the Court GRANTS defendant's motion for summary judgment as to plaintiff's first claim for relief, insofar as plaintiffs seek an order compelling defendant to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

produce documents that have already been produced for an audit that has already been conducted.

However, the Court reserves until the conclusion of this case the question of the appropriate attorneys fees and costs, if any, to which plaintiffs are entitled for expenses allegedly incurred in obtaining defendant's compliance with the audit process.

### 4. Merits-Based Arguments

Notwithstanding its laches and statute of limitations arguments, defendant asserts that plaintiffs' claims for residuals are barred on the merits for the films *Til Death* and *Beyond a Reasonable Doubt*. Def's Mot. Summ J. at 21.[5]

With regard to *Til Death*, defendant asserts that the film is not subject to residual contributions under the Basic Agreement. Def's Mot. Summ. J. at 21. Specifically, defendant argues that, pursuant to Article XIX(c)(1)(iii) and Article XXVIII(c)(1)(iii) of the Basic Agreement, residuals are only triggered where a producer employs two or more individuals subject to the Basic Agreement and West Coast Studio Local Agreements or two or more individuals subject to the Basic Crafts Agreement. Id. Defendant contends that *Til Death* was filmed in Louisiana, where Nu Image employed three West Coast IATSE members. Id. However, defendant asserts that, of these three individuals, one was a Local #600 member and another was a Local #871 member—neither of whom counts towards the two individuals required to trigger residual payments. Id.

In opposition, plaintiffs do not contest that the Basic Agreement requires a producer to employ two qualifying individuals in order to trigger the residual contributions. Pls' Opp'n Summ. J. at 21. Nor do they contest that the Local #871 member identified by defendant was not a qualifying individual. Id. Instead, they assert that their payroll audit of Nu Image revealed that Nu Image made payroll contributions for the work of both Martina Kohl, an IATSE Local 706 make-up or hair stylist, and Douglas Milsome, an IATSE Local 600 camera person, which "by definition" renders them subject to the Basic Agreement. Id.

---

[5] Defendant initially asserted that plaintiffs' claim for residuals with regard to the film *Day of the Dead* was also barred on the merits. Def's Mot. Summ. J. at 22. Defendant has since withdrawn this argument. Def's Reply at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

In reply, defendant does not address plaintiffs' arguments with regard to Kohl, nor does defendant dispute the evidence that Nu Image made payroll contributions for both Kohl and Milsome. Def's Reply Mot. Summ. J. at 13. Instead, Nu Image asserts that Milsome does not count towards the requisite two qualifying individuals because the "Post '60s Proration Checklist makes clear that a member of IATSE Local 600 employed in *one of the 37 states not subject to the West Cast IATSE Agreement*, such as Louisiana, *does not count . . .*" Id. (emphasis in original). In pertinent part, the Post '60s Proration Checklist provides:

> The following persons are not counted for purposes of determining whether "two (2) or more individuals" were employed on a production: (a) individuals employed under the 1996 and 2000 Local #600 Amendment Agreements . . .

> The Local #600 Amendment Agreement applies to the employment of those camerapersons employed in the thirty seven (37) states of the United States not currently covered under the West Coast Agreement, namely, states other than the thirteen (13) western states *i.e.,* Alaska, Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Texas, Utah, Washington and Wyoming and in Puerto Rico.

Dkt. 69-7, Ex. K at 2.

The Court finds that there is a genuine dispute of material fact regarding whether two qualifying individuals worked on *Til Death*, thus triggering defendant's duty to pay residuals. It appears to the Court that defendant concedes that at least one qualifying individual—Martina Kohl—worked on *Til Death*. However, with regard to Milsome, the Court lacks the requisite facts to determine whether he was "employed under the 1996 and 2000 Local #600 Amendment Agreements" while working on *Til Death* and thus not a qualifying employee. Accordingly, the Court finds that there is a genuine issue of material fact and DENIES defendant's motion for summary judgment as to *Til Death*.

With regard to the film *Beyond a Reasonable Doubt*, defendant asserts that Nu Image neither produced nor received revenues from the film and thus it does not owe residuals for any qualifying individual who may have worked on it. Def's Mot. Summ. J. at 21. Instead, Nu Image asserts that it simply rented its Louisiana studio to another production company, and subsequently facilitated two licensing agreements of the German distribution rights. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

In response, plaintiffs assert that Nu Image signed a Project Agreement with IATSE expressly agreeing to make both payroll and residual contributions to the Plans for *Beyond a Reasonable Doubt*. Pls' Opp'n Summ. J. at 22. Moreover, the Plans present an authenticated copy of this Project Agreement. Dkt. 86-5, Ramas Decl. Ex. N. The Agreement states that it is "entered into by and between BAR DOUBT, LLC ("Producer") . . . IATSE, and NU IMAGE, INC." Id. Further, the Project Agreement states in pertinent part:

> NU IMAGE, INC. has entered into a production agreement with Producer, an entity ***controlled by NU IMAGE, INC.***, pursuant to which Producer will be producing a motion picture "BEYOND A REASONABLE DOUBT" ("Motion Picture") as detailed hereafter. By its acknowledgment below, NU IMAGE, INC. confirms that the Motion Picture is subject to each of the separate collective bargaining agreements ("Term Agreements") between NU IMAGE, INC. and the IATSE, including but not limited to:
>
> A.   Producer/I.A.T.S.E. Basic Agreement of 2006;
>
>   i.   Trust Acceptance relating to the Producer/I.A.T.S.E. Basic Agreement;
>
>   ii.  Agreement of Consent relating to the Producer/I.A.T.S.E. Basic Agreement

Id. (emphasis added). This document was executed by Nu Image's CFO on February 19, 2008. Id. Although plaintiffs assert that Nu Image CEO Avi Lerner conceded in his deposition testimony that Nu Image had "sold exploitation rights to a German distributor . . . for $1.5 to $2.0 million," Pls' Opp'n Mot. Summ. J, the deposition testimony to which plaintiffs direct the Court does not in fact contain this statement. See Adelstein Decl., Ex. D (Lerner Deposition).

At a minimum, it appears to the Court that there is a material question of fact regarding whether Nu Image earned revenue from distribution of the film *Beyond a Reasonable Doubt* in secondary markets, thus triggering an obligation to make residual payments to the Plans. Accordingly, the Court DENIES defendant's motion for summary judgment as to *Beyond a Reasonable Doubt*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            'O'

| Case No. | 2:13-cv-03224-CAS(CWx) | Date | November 10, 2014 |
|---|---|---|---|
| Title | DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN ET AL. V. NU IMAGE INC. | | |

## V.     CONCLUSION

In accordance with the foregoing, the Court DENIES plaintiffs' motion for partial summary judgment.

The Court GRANTS defendant's motion for summary adjudication with regard to plaintiffs' first claim for relief, but otherwise DENIES the remainder of defendant's motion.  The Court also DENIES as moot defendant's motion for leave to amend the Court's scheduling order and for leave to file an amended answer.

IT IS SO ORDERED.

|  | 00 | : | 31 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |